IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ROSA GRIFFIS )
)
v. ) No. 1:06-0037
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security[1] )

To: The Honorable John T. Nixon, Senior District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff could perform her past relevant work as a sewing machine operator during the relevant time period is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the record (Docket Entry No. 18) should be denied.

---

[1]Michael J. Astrue is automatically substituted for his predecessor Jo Anne Barnhart as Commissioner of Social Security pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

## I. INTRODUCTION

The plaintiff filed an application for DIB on August 11, 2003, alleging disability due to impairments of her left knee and lower back, with a date of onset on July 20, 2001. (Tr. 39-42, 49.) Her application for DIB was denied initially and upon reconsideration. (Tr. 25-27, 29-30.) A hearing was held before Administrative Law Judge ("ALJ") Linda Gail Roberts on June 22, 2005. (Tr. 200-25.) The ALJ delivered an unfavorable decision on November 30, 2005 (Tr. 12-16), and the plaintiff requested review of that decision before the Appeals Council. (Tr. 8.) On March 22, 2006, the Appeals Council denied the plaintiff's request for review (Tr. 3-5), and the ALJ's decision became the final decision of the Commissioner.

## II. BACKGROUND

The plaintiff was born on September 21, 1952, and was 48 years old as of July 20, 2001, her alleged onset date. (Tr. 23.) She completed the ninth grade (Tr. 205) and subsequently earned a GED. (Tr. 55, 204.) The plaintiff's past jobs included working as a "utility" for an apparel company and as a sewing machine operator. (Tr. 50, 206-07.)

### A. Chronological Background: Procedural Developments and Medical Records[2]

On July 31, 2001, the plaintiff presented to Dr. John Bacon after injuring her left knee. (Tr. 91-92.) Dr. Bacon examined the plaintiff and determined that she had persistent pain, swelling, and locking in her left knee. (Tr. 91.) Dr. Bacon opined that the plaintiff had torn her left medial meniscus and recommended that she undergo an "arthroscopic menisectomy." *Id.* On September 7, 2001, the

---

[2] Every attempt to decipher the medical evidence of the record was undertaken; however, some handwritten notations in the medical records were illegible.

2

plaintiff had surgery to repair the torn cartilage in her left knee (Tr. 194-95), and Dr. Bacon stated that the plaintiff's condition would improve and he estimated that she would be able to return to work by October 5, 2001. (Tr. 193.)

On November 29, 2001, Dr. Bacon wrote a letter to the plaintiff's attorney explaining that the plaintiff had "a permanent partial impairment of three percent of the lower left extremity" and he permanently restricted the plaintiff from squatting, kneeling, and climbing. (Tr. 102.) Dr. Bacon opined that the plaintiff had achieved her maximum medical improvement (Tr. 102) and ordered the plaintiff to refrain from working until her next appointment. (Tr. 101.) On June 20, 2002, in a letter to the plaintiff's attorney, Dr. Bacon reported that although the plaintiff had received a series of Synvisc injections[3] in her left knee, she was going to need "a total knee replacement at some time in the future." (Tr. 95.) Dr. Bacon refrained from assigning the plaintiff an impairment rating since "the rating is based on range of motion and strength and degree of pain following the procedure," but he opined that after her knee replacement she should not engage in squatting, climbing, or lifting more than 20 pounds. *Id.*

On July 24, 2002, Dr. Bacon examined the plaintiff and diagnosed her with left knee degenerative joint disease. (Tr. 183.) He stated that the plaintiff could return to work and engage in "light duty" on March 1, 2003. *Id.* Although Dr. Bacon expected the plaintiff's condition to improve, he placed a permanent restriction on her ability to walk for prolonged periods of time. *Id.* On April 9, 2003, Dr. Bacon again examined the plaintiff and found that she had "pain and swelling of her [left]

---

[3] According to WebMd.com, a Synvisc injection helps reduce osteoarthritic knee pain caused by osteoarthritis through the injection of lubricant into the knee joint, which allows the cartilage surfaces of the bones to rub smoothly against each other.

knee."[4] (Tr. 90) He noted that x-rays revealed "medial joint space narrowing consistent with post traumatic arthritis," but Dr. Bacon believed that it was "secondary to her previous [left knee] medial meniscal injury and surgery." *Id.* Dr. Bacon recommended that the plaintiff undergo total knee replacement surgery since the conservative treatment that he had prescribed did not relieve her symptoms. *Id.*

On November 10, 2003, the plaintiff presented to Tennessee Disability Determination Services ("DDS") physician Dr. Darrel Rinehart with complaints of left knee and back pain. (Tr. 107-09.) The plaintiff reported that she had been experiencing left knee pain for a year and a half to two years and that the pain had "gotten progressively worse with time." (Tr. 107.) She stated that her knee "lock[s] out" and constantly throbs if she stands for "any length of time," and that she is unable to stand for more than one hour or walk more than 200 yards. *Id.* Dr. Rinehart determined that there was no swelling, erythema, or warm touch in either of the plaintiff's knees, and that she was able to get up and down from the examining table "reasonably well." (Tr. 108.) He noted that the plaintiff walked with a slight limp, had negative straight leg reflexes, balanced on one foot "fairly well," could touch her toes, and was only able to squat half way. *Id.* Dr. Rinehart concluded that in an eight hour workday the plaintiff would be able to stand or walk for four to six hours and could lift 20 pounds intermittently. (Tr. 108-09.)

On January 9, 2004, consultating physician Dr. Frank Pennington completed a physical residual functional capacity ("RFC") assessment of the plaintiff (Tr. 110-15), and found that the plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently, and could

---

[4] Dr. Bacon mistakenly refers to the plaintiff's right knee in this treatment note from April 9, 2003, but it is clear from the rest of his diagnosis that he was actually referring to the plaintiff's left knee.

4

stand/walk or sit for about six hours in an eight hour workday. (Tr. 111.) Dr. Pennington determined that the plaintiff's ability to push or pull was limited in her lower extremities, and that she had no manipulative, visual, communicative, or environmental limitations. (Tr. 111-13.) He concluded that the medical evidence did not support the plaintiff's allegations of pain or "the degree of [her] restrictions." (Tr. 114.)

On March 8, 2004, the plaintiff was admitted to the Sumner Regional Medical Center to undergo a total left knee replacement. (Tr. 147-51, 157-59.) The intake report indicated that the plaintiff had a "long history of pain, swelling, and popping and catching involving her left knee," and that those symptoms had not been remedied by a previous arthroscopic surgery, cortisone injections, Synvisc injections, or anti-inflammatory medications. (Tr. 147.) The intake report also noted that the plaintiff was having "significant difficulties" performing her activities of daily living. *Id.* While the plaintiff awaited left knee replacement surgery, Dr. Louis Seibert completed a pathology report and found that the she had "[s]light degenerative joint changes [and] [m]ainly subarticular bone thickening by histology." (Tr. 157.)

On March 8, 2004, Dr. Bacon performed the plaintiff's left total knee replacement (Tr. 150) and five days later she was prescribed Percocet and Lovenox, and she was discharged from the hospital under the care of Home Health. (Tr. 148.) On March 24, 2004, Dr. Bacon examined the plaintiff and found her to be "doing well" and having "little pain." (Tr. 138.) On April 16, 2004, Home Health notified Dr. Bacon that the plaintiff was no longer homebound (Tr. 154), and on May 3, 2004, Dr. Bacon stated that the plaintiff would not be able to return to work. (Tr. 129.) He examined her again on May 5, 2004, and reported that her left knee had minimal swelling. (Tr. 137.) On May 14, 2004, Dr. Bacon recommended that the plaintiff begin exercising. (Tr. 136.) On June 24, 2004,

5

Dr. Bacon noted that the plaintiff's left knee exhibited mild swelling, but had a good range of motion (Tr. 124), and nearly three months later on September 28, 2004, he reported that the plaintiff had a little pain in her left knee and no swelling. (Tr. 122.) On March 25, 2005, Dr. Bacon reported that the plaintiff had little pain and no swelling in her left knee, but that she had swelling in her right knee. *Id.*

**B. Hearing Testimony: The Plaintiff and the Vocational Expert**

At the hearing before the ALJ, the plaintiff was represented by counsel, and the plaintiff and Gordon Doss, a Vocational Expert ("VE"), testified. (Tr. 201-25.) The plaintiff testified that she completed school through the ninth grade, and later received her GED. (Tr. 204-05.) The plaintiff also related that she is able to read, write, and perform simple arithmetic. (Tr. 219.)

The plaintiff reported that since July 20, 2001, her alleged onset date, the only work that she had performed was at a fair concession stand for three days. (Tr. 205-06.) The plaintiff testified that she had previously worked at a warehouse for four years, at a sewing factory for six years where the heaviest object that she had to lift weighed 50 pounds, and as a utility worker at Joan's Apparel. (Tr. 206-08.)

The plaintiff testified that left knee and back problems are the impairments that prevent her from working. (Tr. 208.) The plaintiff explained that she goes to Dr. Bacon for her left knee problems and to "Dr. Goodmoat," a family physician, for her back problems.[5] (Tr. 209.) However, in response to her attorney's question, the plaintiff acknowledged that she had not mentioned her back trouble to any doctor. (Tr. 210.)

---

[5] There are no treatment notes from Dr. Goodmoat in the record.

6

The plaintiff stated that she had left knee replacement surgery a year and three months prior to the hearing and that she still experiences swelling and throbbing. (Tr. 210-11.) She related that her left knee pain only allows her to do 45 minutes of housework before she has to sit down, and that while sitting she has to prop her leg up to reduce the swelling. (Tr. 211.) The plaintiff testified that her left knee has been "getting worse" and that her right knee "locks up" and "makes [her] fall" due to overuse. (Tr. 212.) She related that Dr. Bacon also recommended right knee replacement surgery. *Id.* The plaintiff testified that after she worked for three days at a fairground concession stand in September of 2004, she was "laid up in bed" for two weeks with back pain and swelling in her legs and had to take pain medication. (Tr. 213.) She related that her knee pain makes it difficult for her to drive, and that she has right knee pain after standing for 30 minutes or after walking approximately 50 yards. (Tr. 214-15.) The plaintiff testified that even after knee replacement surgery, her left knee is "getting worse." (Tr. 215.)

The plaintiff also related that she takes care of her three grandchildren and that they help her "when [she is] down" by getting her water or preparing food. (Tr. 216.) She explained that her weight has increased because she is not able to exercise, that she only sleeps three hours a night due to the throbbing in her leg, and that she is not able to play with her children or "go out" with her husband. (Tr. 218.) The plaintiff testified that she could not go back to work at Joan's Apparel, due to her left knee pain, because that job required her to go up and down stairs, walk considerable distances, bend, and lift 50 pounds. (Tr. 219.)

The VE testified, given the plaintiff's age of 52, that she was approaching "advanced age," but that since she has a GED her "literacy would not be a deterrent to finding work or being trained for work." (Tr. 220.) The VE described the plaintiff's previous jobs as an order clerk and hand packer

7

as medium and semiskilled, and her work as a sewing machine operator as light to medium and unskilled to semiskilled. (Tr. 221.) The VE testified that if the plaintiff had the restrictions as provided in Dr. Pennington's physical RFC, she would be able to perform all of her past work. (Tr. 222.) Additionally, if the plaintiff's ability to squat, kneel, or climb were permanently restricted, the VE related that she would not be able to engage in "order pulling," but could operate a sewing machine and work as a packer. *Id.* The VE testified that if the ALJ concluded that the plaintiff's pain was moderate in nature, the plaintiff would be able to perform her previous work. (Tr. 223.) The VE also stated that if the ALJ determined the plaintiff's level of pain to be moderate to severe, then she would not be able to engage in any work. *Id.*

### III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable decision on November 30, 2005. (Tr. 12-16.) Based on the record, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Act as of the alleged onset date.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. The claimant has "severe" impairments including status post total left knee replacement.

4. The claimant's impairments, considered individually and in combination, do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, and Appendix 1.

5. The claimant's allegations of pain and functional limitations are not fully credible for the reasons discussed above.

6. The claimant retains the residual functional capacity to perform a limited range of light work as described above.

8

7. The claimant can perform past relevant work as a sewing-machine operator per VE testimony.

8. The claimant is not disabled within the meaning of the Act.

(Tr. 15).

## IV. DISCUSSION

### A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if the evidence could also support another conclusion. *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a "severe impairment." A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve

10

months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment, and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work, or proving that a particular past job should not be considered relevant. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. *See, e.g., Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L.Ed.2d 1315 (1983) (upholding the validity of the medical-vocational guidelines "grid" as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*,

11

203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the plaintiff can perform, she is not disabled.[6] *Id. See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

### B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's case at step four of the five-step process. (Tr. 15.) At step one, the ALJ found that the plaintiff successfully demonstrated that she had not engaged in substantial gainful activity since July 20, 2001, the alleged onset date of disability. *Id.* At step two, the ALJ found that the plaintiff suffers from "severe impairments including status post total left knee replacement." *Id.* At step three, the ALJ determined that the plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. *Id.* At step four, the ALJ found that the plaintiff could perform "a limited range of light work" and return to her past relevant work as a sewing machine operator. *Id.*

---

[6] This latter factor is considered regardless of whether such work exists in the immediate area in which the plaintiff lives or whether a specific job vacancy exists or whether the plaintiff would be hired if she applied. *Ragan v. Finch*, 435 F.2d 239, 241 (6th Cir. 1970).

12

### C. The Plaintiff's Assertion of Error

The plaintiff contends that the ALJ erred in evaluating the credibility of her subjective complaints of pain in her left and right knees. Docket Entry No. 17, at 3-7. The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision on credibility rests with the ALJ. *See Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir.1987). The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the [plaintiff] and judge [her] subjective complaints." *See Buxton v. Halter*, 246 F. 3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the [plaintiff's] complaints as incredible, [she] must clearly state [her] reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing *Felisky*, 35 F. 3d at 1036).

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186 at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at 5. The ALJ must explain her credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. *Id.*

Both the Social Security Administration ("SSA") and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit in *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such

13

claims.[7] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039. The second prong has two parts: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.* This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)). The SSA also provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 404.1529(c).[8] The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2).

There is objective medical evidence of the plaintiff's left and right knee pain. The plaintiff underwent a total left knee replacement on March 8, 2004 (Tr. 147-51), and when Dr. Bacon examined the plaintiff nearly a year later on March 25, 2005, he found that she had right knee swelling. (Tr. 122.) This objective medical evidence satisfies the first prong of the *Duncan* Test. However, the plaintiff does not satisfy the second prong of the *Duncan* Test for either her left or right knee pain because the objective evidence does not confirm the severity of the alleged pain arising

---

[7] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n. 2.

[8] The seven factors under 20 C.F.R. § 404.1529(c)(3) include: (i) the plaintiff's daily activities, (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms, (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms, (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (vii) other factors concerning plaintiff's functional limitations and restrictions due to pain or other symptoms.

14

from the medical condition nor does it establish that the medical condition is of such a severity that it could be reasonably expected to produce the alleged disabling pain. *See Felisky*, 35 F.3d at 1039.

The plaintiff had an arthroscopic menisectomy to repair torn cartilage in her left knee on September 7, 2001. (Tr. 194-95.) After this procedure, Dr. Bacon restricted the plaintiff's ability to squat, kneel, and climb, and ordered a series of Synvisc injections for the plaintiff in an attempt to further alleviate her left knee pain. (Tr. 102.) The plaintiff's left knee pain and swelling continued and Dr. Bacon recommended left knee replacement surgery. (Tr. 90.) However, before the plaintiff had left knee replacement surgery, DDS physician Dr. Rinehart examined her and found that although she had some physical limitations, she was able to stand or walk for four to six hours and could lift 20 pounds intermittently in an eight hour workday. (Tr. 108-09.) Additionally, Dr. Pennington, a nonexamining consultating physician, completed a RFC assessment on the plaintiff (Tr. 110-15) and noted that she could lift 50 pounds occasionally and 25 pounds frequently, and could stand/walk or sit for about six hours in an eight hour workday. (Tr. 111.) He determined that the plaintiff's ability to push or pull in her lower extremities was limited, but that the medical evidence did not support her allegations of pain or "the degree of her restrictions." (Tr. 114.)

Dr. Bacon performed the plaintiff's left knee total replacement surgery on March 8, 2004. (Tr. 150.) Dr. Bacon's post surgery examination reports noted that the plaintiff was "doing well" and had "little pain" (Tr. 138), and nearly a month after surgery she was no longer homebound (Tr. 154.) Over the next year, Dr. Bacon described the plaintiff's left knee as having "little pain," exhibiting no or only "mild" swelling (Tr. 122, 124, 135 137), and displaying a good range of motion. (Tr.124.) On March 25, 2005, nearly one year after the plaintiff's operation, Dr. Bacon reported that the plaintiff had little pain and no swelling in her left knee. (Tr. 122.) The plaintiff points out that on May 3, 2004,

nearly two months after her surgery, Dr. Bacon opined that she would "never" be "released to return to work." (Tr. 129.) However, the regulations clearly indicate that ability to work determinations are reserved for the Commissioner:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

20 C.F.R. § 404.1527(e)(1). Thus, an ALJ "will not give any special significance to opinions on issues reserved to the Commissioner." *Jarvis v. Comm'r of Soc. Sec.*, 2009 WL 649655, at *4 (S.D.Ohio March 9, 2009) (citing 20 C.F.R. § 404.1527(e)(2)). Furthermore, Dr. Bacon's own medical records are inconsistent with his conclusion that the plaintiff will be precluded from returning to work since his treatment notes indicate that the plaintiff steadily improved after her total left knee replacement surgery.

The three main medical sources in the record, Dr. Bacon's treatment notes, Dr. Rinehart's examination report, and Dr. Pennington's RFC assessment, do not provide medical evidence that satisfies the second prong of the *Duncan* Test. Based on Dr. Rinehart's and Dr. Pennington's evaluations, made before the plaintiff's left knee replacement surgery, the plaintiff could lift at least 20 pounds frequently and to stand/walk for at least four to six hours in an eight hour work day. (Tr. 108-09, 111.) Dr. Bacon's treatment notes indicate that after the plaintiff had left knee replacement surgery, she had little pain (Tr. 138) and minimal swelling (Tr. 122, 124, 137). While it is clear that the plaintiff has had a left knee impairment that resulted in a significant surgical procedure, the record medical evidence does not support the plaintiff's claim that her left knee pain is disabling.

16

The plaintiff's alleged disabling right knee pain also does not satisfy the second prong of the *Duncan* Test. On March 25, 2005, Dr. Bacon noted that the plaintiff had swelling in her right knee. (Tr. 122.) This is the first time that the record medical evidence referenced any problem with the plaintiff's right knee. Thus the objective medical evidence does not confirm the severity of the plaintiff's right knee pain or establish that her right knee condition is of such a severity that it could be reasonably expected to produce the alleged disabling pain. *See Felisky*, 35 F.3d at 1039. Dr. Bacon's one time diagnosis of swelling simply indicates that the plaintiff has a potential right knee impairment, but does support the plaintiff's claim that she suffers from disabling right knee pain.

The ALJ also complied with Social Security Ruling 96-7p by providing the plaintiff a clear explanation for her determination. (Tr. 14-15.) The ALJ stated that

> I have considered the claimant's subjective complaints, including those regarding pain, in accordance with 20 C.F.R. § 404.1529, Social Security Ruling 96-7p, and applicable Sixth Circuit case law. Overall there are minimal findings to substantiate a basis for the intensity, severity, and frequency of pain at a level that would significantly interfere with work-related activities as documented by the records of the treating and examining records. The [plaintiff] complained of left and right knee pain and low back pain. The [plaintiff] did undergo left total knee replacement and she no doubt has some arthritic pain in that knee. The RFC I assigned took that into consideration. There is no objective medical evidence in the file to support her complaint of right knee or low back pain. She stated that for pain relief she took pain medication and rested. She did not describe any significant side effects to her medication. The [plaintiff] reported that during the day she tried to do housework by taking her time and that her grandchildren and husband helped with the cooking and cleaning. Considering the evidence in its entirety, the Administrative Law Judge does not find the [plaintiff's] complaints persuasive to the extent alleged.

*Id.* It is clear from the ALJ's explanation that she considered the appropriate regulations, SSA rulings, case law, and record medical evidence in concluding that the plaintiff did not have disabling pain in her left or right knee or in her lower back. *Id.* In determining the plaintiff's RFC, the ALJ complied with the factors in 20 C.F.R. § 404.1529(c)(3) by specifically taking into account the plaintiff's daily

17

activities; the "location, duration, and intensity of [her] pain;" her prescribed medication; and "[t]reatment, other than medication," that she received for her pain. The ALJ properly weighed the evidence in the record and did not err in determining that the plaintiff's allegations of disabling pain were not credible. Thus, there is substantial evidence in the record to support the ALJ's conclusion that the plaintiff retained the RFC "to perform a limited range of light work" and return to her past relevant work as a sewing machine operator. (Tr. 15.)

## V. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the record (Docket Entry No. 18) be DENIED and that the Commissioner's decision be affirmed.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of the Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*. 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge